UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SOUTHWEST LOUISIANA HOSPITAL ASSOCIATION | : | CIVIL ACTION NO. 2:11-CV-2105 |
| V. | : | JUDGE MINALDI |
| CONNECTICUT GENERAL LIFE INSURANCE CO., ET AL. | : | MAGISTRATE JUDGE KAY |

MEMORANDUM RULING

Before the court is a Motion to Remand [doc. 4] filed by plaintiff Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Hospital (LCMH). This motion is opposed by the defendants Connecticut General Life Insurance Co. (CGLI) and CIGNA Healthcare Inc. (CIGNA) Doc. 9.

For the reasons set forth herein, LCMH's motion is **GRANTED** and this case is remanded to the 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana.

*Background*

This case arises out of a "managed care agreement" between LCMH and CGLI. Doc. 1, att. 1. The agreement provided that LCMH would accept a discounted payment from CIGNA's customers in exchange for certain acts on the part of CIGNA, including patient referral. *Id.*

LCMH alleges patient M.M. was admitted to LCMH's facility, for treatment and care, on three separate occasions in 2010 (March-April, July-August, and October). Doc. 1, p. 2. M.M. was insured under a health plan provided by his employer and administered by CIGNA. *Id.* LCMH verified M.M.'s coverage status with CIGNA upon each of M.M.'s stays at LCMH.

Doc. 1, att. 1, p. 4-5.  CIGNA paid LCMH in full for all of M.M.'s admissions and treatments. *Id.*  However, on January 18, 2011, CIGNA contacted LCMH requesting refunds for the payments rendered for M.M.'s stays in July-August, and October, on the basis that M.M. was not covered under his employer's health plan during that time.  *Id.* at 5.  LCMH refunded CIGNA $36,378.55 under protest for M.M.'s October stay but refused to give any refund for the July-August stay because LCMH deemed CIGNA's request untimely under state law.  *Id.*

On July, 21, 2011, LCMH filed suit in Louisiana's 14th Judicial District Court, Calcasieu Parish, naming CGLI and CIGNA as defendants.  *Id.* at 1.  LCMH alleges that the managed care agreement was breached when CIGNA demanded repayment for M.M.'s stays at LCMH.  *See id.* at 6.  Specifically, LCMH contends that, after LCMH verified M.M.'s coverage status with CIGNA and obtained authorization for treatment, CIGNA was required to pay LCMH for M.M.'s admission and treatment.  *See id.*  Therefore, LCMH has advanced state law claims of breach of contract, and alternatively, for unjust enrichment and detrimental reliance.  *Id.* at 6 -7.  With respect to damages, LCMH seeks the money it returned to CIGNA; $36,378.55.  *See id.* at 5-8.

On December 5, 2011, the defendants removed this case to federal court.  Doc. 1.  In the Notice of Removal defendants submitted that this court has both federal question and diversity subject-matter jurisdiction.  *Id.* at 2-3.  Particularly, the defendants suggest that this court has diversity jurisdiction because the plaintiff is a citizen of Louisiana and the defendants are citizens of Connecticut (CGLI) and Vermont (CIGNA).  *Id.* at 2.  Further, the defendants contend that the amount in controversy in this matter exceeds $75,000.  *Id.* at 3.  With respect to federal question jurisdiction, the defendants argue that "this action arises under the Employee Retirement Income Security Act ("ERISA"), a federal law, because the health plan which forms the foundation of

this controversy is an ERISA plan. ERISA law supersedes any and all state laws related to such a health plan." *Id.* (citing 29 U.S.C. § 1144(a)).

On December 28, 2011, LCMH filed the instant motion to remand. Doc. 4. In support, LCMH argues that the defendants improperly removed this case because federal subject-matter jurisdiction does not exist. Specifically, LCMH disputes that its claims arise under ERISA or that the amount in controversy exceeds $75,000. *See* doc. 4, att. 1. LCMH suggests that federal jurisprudence allows for state law claims, independent from ERISA, when the claims are asserted directly against a managed care provider and are based on a legal duty separate and distinct from ERISA and that it is facially apparent from LCMH's state court petition that the amount in controversy is well below $75,000 ($36,378.55). *See* doc. 4, p. 4.

The defendants oppose remand and argue that LCMH has inaccurately calculated the amount in controversy; they contend that the actual amount is $137,653.72. Doc. 9 at 3. The defendants arrive at this figure by adding the amount from M.M.'s July-August stay at LCMH, which amounted to $101,275.17 and suggest this amount should be added because LCMH:

> alleges that it is entitled to retain the amounts paid [by CIGNA] for the July-August hospital stay and that Defendants should not be allowed to recoup those amounts through demands or otherwise. Further, in its prayer for relief, LCMH requests all orders and decrees necessary and for full general and equitable relief.

*Id.* (citations omitted). In essence defendants suggest that LCMH seeks a declaratory relief concerning payment for the July-August stay and that this amount is included in the "amount in controversy." Defendants also note that they have filed a counterclaim against LCMH for $101,275.17 (the July-August amount). Doc. 8, p. 7. The defendants do not address the issue of federal-question jurisdiction in their opposition to LCMH's motion to remand. *See* doc. 9.

On January 27, 2012, LCMH filed a reply to the defendants' opposition brief.  Doc. 10.  Therein, LCMH argues that it is clear "from the face of [LCMH's state court petition] that the damages at issue in [this case] relate solely to the refund amount wrongfully sought and paid by LCMH to CIGNA concerning patient M.M.'s October stay at [LCMH]."  *Id.* at 2 (emphasis in original).  Furthermore, LCMH contends that federal jurisprudence precludes the consideration of counterclaims when determining the "amount in controversy."  *Id.* at 3-4.  Additionally, LCMH makes note that the defendants did not brief the issue of federal-question jurisdiction, and therefore, LCMH concludes that the defendants have conceded that issue.  *Id.* at 1.  For these reasons, LCMH declares that subject-matter jurisdiction is lacking in this case, and that a remand to state court would be proper.

*Law and Analysis*

Federal Courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  They possess only that power authorized by the Constitution and by statute.  *Id.*  Federal courts have original jurisdiction in all civil matters arising under federal law, and also, where the parties are citizens of different states and the amount in controversy exceeds $75,000.00.  *See* 28 U.S.C. §§ 1331, 1332.  Civil actions that are filed in state court may be removed to federal court by a defendant if the conditions set forth in either section 1331 or section 1332 are met.  *See* 28 U.S.C. § 1441.

It is well settled that the removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists.  *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) (citing *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 253-54 (5th Cir. 1961)).  To assess whether jurisdiction is appropriate the court considers "the claims in the state court petition as they existed at the time of removal."  *Manguno v. Prudential Prop. &*

*Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id.*

In this case, the defendants are the removing parties, and they have attempted to establish federal subject-matter jurisdiction by demonstrating that both federal-question (section 1331) and diversity (section 1332) jurisdiction exist.

### I.      *Federal Question Jurisdiction*

In the defendants' notice of removal, they argue that this case arises under ERISA, a federal law, and therefore, that this court has federal-question jurisdiction.  However, this argument was absent in the defendants' opposition to remand brief.  LCMH suggests that this absence means that the defendants have abandoned the argument.  Nevertheless, because the defendants have not expressly conceded the issue, this court will examine the allegations made in the notice of removal.

The defendants contend that M.M.'s health plan is an ERISA plan, and as such, ERISA law preempts any state law claims made in relation to the health plan.  *See* doc. 1, p. 3. Therefore, even though LCMH's state court petition did not include claims under federal law, the defendants conclude that there is a federal question at issue in this case.  *See id.*

Generally, the presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936)).  "This rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  *Id.*

However, there is an exception to the well-pleaded complaint rule; "when a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state law claim can be removed." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004) (internal quotation omitted). "This is so because when the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. ERISA is one of these statutes." *Id.* at 208 (internal quotation and citation omitted).

The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. *McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411, 416 (5th Cir. 2008) (citing *Aetna Health Inc*, 542 U.S. at 208). To this end, ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). The United States Supreme Court has stated that a law "relates to" an employee benefit plan and is preempted if it has a connection with or reference to the plan. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).

Under Fifth Circuit precedent, to determine whether a state law relates to a plan for purposes of ERISA preemption, the court should ask: "(1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries." *McAnteer*, 514 F.3d at 417 (citing *Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006)).

It is clear that LCMH's claims in this case are not preempted. LCMH's state law claims relate to the contract between it and the defendants and have nothing to do with anyone's right to

receive benefits under the terms of an ERISA plan.  Furthermore, LCMH's contractual claims do not involve "traditional" ERISA parties, such as the employer, the beneficiary, or even the terms of the ERSIA plan.  Additionally, numerous courts have found state law claims to not be preempted in similar situations.  *See, e.g., Transitional Hosp. Corp. v. Blue Cross & Blue Shield*, 164 F.3d 952, 954 (5th Cir. 1999) (holding that ERISA does not preempt state law when the state-law claim is brought by an independent, third-party health care provider against an insurer for its negligent misrepresentation regarding the existence of health care coverage); *see also Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245-50 (5th Cir. 1990); *Center for Restorative Breast Surgery, LLC v. Blue Cross & Blue Shield*, No. 06-9985, 2007 WL 1428717, at *5 (E.D. La. May 10, 2007).

For these reasons, this court finds that LCMH's state law claims against the defendants are not preempted by ERISA.  Therefore, there is no federal question in this case and this court does not have subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II.     *Diversity Jurisdiction*

In the defendants' notice of removal and opposition to remand they assert that this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  It is uncontested that the parties in this action are diverse; LCMH is a citizen of Louisiana and the defendants are citizens of Connecticut (CGLI) and Vermont (CIGNA).  However, the "amount in controversy" requirement set forth in section 1332 is in dispute.

Generally, in determining the amount in controversy, when the plaintiff has alleged a specific sum of damages in its petition, that amount controls, if made in good faith.  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938).  However, if a defendant is able to show, by a preponderance of the evidence, that the amount in controversy is, actually, over

$75,000, then diversity jurisdiction may exist. *See Lucket v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). A defendant may do this by either showing that it is facially apparent that the amount in controversy exceeds $75,000.00, or by setting forth facts in its removal petition (or affidavit) that support a finding of the requisite amount in controversy. *Id.*

Defendant's removal notice simply states that the amount in controversy exceeds $75,000. *See* doc. 1, p. 3. In their opposition to remand brief defendants insinuate that LCMH seeks declaratory relief when they state

> LCMH also alleges that it is entitled to retain the amounts paid [by CIGNA] for the July-August hospital stay and that Defendants should not be allowed to recoup those amounts through demands or otherwise. Further, in its prayer for relief, LCMH requests all orders and decrees necessary and for full general and equitable relief. Notably, the amounts paid in connection with the July-August hospital stay total $101,275.17. Accordingly, the total amount in controversy for purposes of determining diversity jurisdiction is $137.653.72 . . ..

Doc. 9, p. 3 (internal citations omitted). In a footnote to the above quoted section of the defendants brief, the defendants quote the Supreme Court's decision in *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977), for the proposition that "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Doc. 9, p. 3 n. 2.

Defendants' valiant efforts to create this amount in controversy notwithstanding, we find nothing in plaintiff's petition that would suggest it intended to render the July-August payment part of this controversy. Plaintiff has alleged three separate theories under which it is owed one sum of money: breach of contract, unjust enrichment, and estoppel/detrimental reliance. *See* doc. 1, att. 1, p. 4-5. Under each separate theory plaintiff seeks no more than the sum of money

it refunded to CINGA.  *See id.*, ¶¶ 20, 22, and 25.  Nowhere in plaintiff's petition do we find any request that we declare its entitlement to retain the July-August payment.

Defendants additionally argue that the amount in controversy is met when considering their counterclaim to recover the July-August payment [doc. 8] and that this counterclaim should be considered in the amount in controversy analysis.  *See* doc. 9, p. 3-4.  The Fifth Circuit has held that using counterclaims as an independent basis for determining the amount in controversy is "error as a matter of law."[1]  *St. Paul Reinsurance Co., Ltd. v. Greenburg*, 134 F.3d 1250, 1254 (5th Cir. 1998) *see also Royal Cosmopolitan, LLC v. Star Real Estate Group, LLC*, 629 F.Supp. 594, 600-01 (E.D. La. 2008).  Additionally, allowing federal subject-matter jurisdiction to be created by a defendant's counterclaim, filed post-removal, would be contrary to several longstanding jurisdictional principles.  *See Mollan v. Torrnace*, 22 U.S. 537, 539 (1824) (holding that a federal court's jurisdiction "depends upon the state of things at the time of the action brought . . ."); *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 574-75 (2004) (holding that events subsequent to the filing of the complaint cannot create federal jurisdiction);[2] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (noting that the plaintiff is the "master of the claim" who may "avoid federal jurisdiction" by carefully tailoring the allegations in his complaint).

For these reasons this court finds that amount in controversy is well below the jurisdictional threshold in 28 U.S.C. § 1332 and that federal subject-matter jurisdiction does not exist in this case.

---

[1] The Fifth Circuit allows for counterclaims to be considered to "merely clarify ambiguity regarding the amount in controversy."  *See Greenburg*, 134 F.3d at 1254 n. 18.

[2] There is one narrow exception to this rule.  *See Grupo Dataflux*, 541 U.S. at 572 (recognizing that a defect in diversity jurisdiction may be cured by dismissing a nondiverse party).

*Conclusion*

For the foregoing reasons, this court finds that the defendants' have not carried their burden in establishing that federal subject-matter jurisdiction exists in this case. The plaintiff's Motion to Remand [doc. 4] is **GRANTED**.

A separate order of remand is being issued herewith. As set forth in that order, the effect of the order will be suspended for a period of fourteen (14) days from today's date to allow the parties to appeal to the district court for review. Should either party seek review from the district court, then the effect of this order is suspended until final resolution of the issue by the district court.

THUS DONE this 21st day of May, 2012.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE